IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

PAULL ASSOCIATES REALTY, LLC,
a West Virginia limited
liability company,

      Plaintiff,

v.                                 Civil Action No. 5:13CV80
                                                 (STAMP)

LEXINGTON INSURANCE COMPANY,
a foreign corporation,

      Defendant.

**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFF'S MOTION TO
REMAND AND/OR ABSTAIN AND
DENYING DEFENDANT'S MOTION TO BIFURCATE
AND STAY THE BAD FAITH ACTION**

I.  Background

The plaintiff, Paull Associates Realty, LLC ("PAR"), originally filed this action in the Circuit Court of Marshall County, West Virginia against defendant, Lexington Insurance Company ("Lexington"), asserting claims for beach of contract, common law bad faith claims, and violations of the West Virginia Unfair Trade Practices Act ("WVUTPA"). Further, PAR seeks a declaratory judgment against Lexington finding that Lexington owes a duty to PAR to defend and indemnify it based on a professional liability insurance policy.

These claims arise out of the underlying state court action filed by Jeremy Majewski and Nicole Majewski, which alleges claims of negligence, breach of contract, and breach of an implied

covenant of good faith and fair dealing resulting from a home inspection and purchase.  PAR is a third-party defendant in the underlying action.  After being made a third-party defendant to the underlying action, PAR asserted a fourth-party complaint against Lexington in the underlying action, which involves the same claims made in the instant action.  Before asserting the fourth-party complaint, however, PAR filed this action against Lexington to preserve the statute of limitations, as it had not yet been made a third-party defendant in the underlying action.  Thus, two identical complaints currently exist against Lexington -- the fourth-party complaint in the underlying state court action, and this complaint, which Lexington removed to this Court based on diversity jurisdiction.

After Lexington removed this case, the parties filed two different motions.  Lexington filed a motion to stay and bifurcate the bad faith action until there is a final resolution of the coverage claims.  PAR then filed a motion to remand and/or abstain from exercising jurisdiction.

In PAR's motion to remand and/or abstain, PAR first argues that this Court is permitted to decline jurisdiction over declaratory judgment actions like the one at issue, as the factors set out by the United States Court of Appeals for the Fourth Circuit in Nautilus Ins. Co. v. Winchester Homes, 15 F.3d 371 (4th Cir. 1994), weigh in favor of abstaining from exercising

2

jurisdiction.  Further, PAR argues that abstention is appropriate in this case under the Colorado River doctrine, based on the exceptional circumstance that exist with this Court and the state court exercising jurisdiction in parallel proceedings.  Colorado River Conservation Dist. v. United States, 424 U.S. 800 (1976).

In response, Lexington argues that the instant action was filed prior to the state action and takes precedence under the "prior action pending" rule.  As such, Lexington argues that this Court should not abstain or remand this case.  Lexington also argues that this Court should not abstain from exercising jurisdiction under the Nautilus factors because this case involves claims other than a claim for declaratory judgment.  As to whether this Court should abstain based on the Colorado River doctrine, Lexington argues that this case is not a parallel proceeding to the state court action and does not involve any exceptional circumstances that would warrant abstention.  Thus, Lexington argues that this Court should not remand or abstain from hearing this action based on the Colorado River doctrine.

As to Lexington's motion to bifurcate and stay the bad faith action, Lexington first states that West Virginia law permits bifurcation of coverage and bad faith claims.  Further, Lexington argues the factors under Rule 42(b) of the Federal Rules of Civil Procedure favor the bifurcation and stay of trial for PAR's bad faith and WVUTPA claims.  Lexington also argues that the factors

enumerated in <u>Light v. Allstate</u>, 506 S.E.2d 64 (W. Va. 1998), favor the bifurcation and stay of discovery concerning PAR's bad faith and WVUTPA claims.  In response to these arguments, PAR argues that bifurcation is not warranted as to discovery in this matter. Specifically, PAR argues that it would be prejudiced by being prohibited from proceeding in discovery on all claims, because it will have to revisit essentially the same discovery and depose the same witnesses when the bad faith claims are ultimately permitted to proceed.  PAR, however, does assert that at this time, it takes no position as to whether it would be appropriate to bifurcate the claims for trial.  Instead, PAR only argues that such motion is premature.  Lexington filed a timely reply, wherein it contested PAR's arguments in opposition to the motion for bifurcation and stay.

For the reasons set forth below, this Court denies PAR's motion to remand and/or abstain, and denies Lexington's motion for bifurcation and stay.

## II.  <u>Discussion</u>

This Court must first determine whether to abstain or remand any or all claims in this matter prior to determining whether it should bifurcate the claims in this matter, because if it determines that certain claims should be dismissed, the motion to bifurcate and stay may be moot.  Therefore, this Court will address

PAR's motion to abstain and/or remand prior to addressing Lexington's motion to bifurcate and stay.

A.   <u>Motion to Remand and/or Abstain</u>

Initially, the plaintiff argues that because this action involves both claims for declaratory judgment and other claims for relief, this Court should analyze whether or not to remand or abstain from exercising jurisdiction under both the factors set out in <u>Nautilus</u> and the <u>Colorado River</u> doctrine.  Regarding which standard applies to actions that involve both claims for declaratory judgment and claims for additional relief, the Fourth Circuit has stated that, while not expressing a definitive view on the issue, their "jurisprudence suggests that, in a 'mixed' complaint scenario the [declaratory judgment] standard does not apply, at least to the non-declaratory claims." <u>Great American Ins. Co. v. Gross</u>, 468 F.3d 199, 210 (4th Cir. 2006).  Therefore, it seems that this Court must apply the <u>Colorado River</u> doctrine, which is the applicable abstention standard for non-declaratory judgment claims, to PAR's breach of contract claims, common law bad faith claims, and claims regarding violations of WVUTPA, even if not applying it to PAR's claim for declaratory judgment.  This Court will then determine whether abstention as to PAR's declaratory judgment claim is appropriate based on the <u>Nautilus</u> factors.

1.   <u>Application of the Colorado River Doctrine</u>

The <u>Colorado River</u> doctrine permits federal courts to stay or dismiss claims over which the courts have federal question jurisdiction where pending parallel state proceedings raise the identical issues.  <u>Colorado River Conservation Dist. v. United States</u>, 424 U.S. 800 (1976).  The <u>Colorado River</u> doctrine is not a doctrine of abstention, which is based upon the principles of federalism and comity for state relations; rather, it is a doctrine resting upon considerations of judicial economy and "wise judicial administration."  <u>Id.</u> at 813.  For this reason, courts should apply the <u>Colorado River</u> doctrine only in exceptional circumstances.  <u>Id.</u> at 818.

The United States Court of Appeals for the Fourth Circuit has summarized the approach for applying the <u>Colorado River</u> doctrine:

> The threshold question in deciding whether <u>Colorado River</u> abstention is appropriate is whether there are parallel federal and state suits.  If parallel suits exist, then a district court must carefully balance several factors, with the balance heavily weighted in favor of the exercise of jurisdiction.  Although the prescribed analysis is not a hard-and-fast one in which application of a checklist dictates the outcome, six factors have been identified to guide the analysis: (1) whether the subject matter of the litigation involves property where the first court may assume <u>in rem</u> jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights.  In the end, however,

> abstention should be the exception, not the rule, and it
> may be considered only when the parallel state-court
> litigation will be an adequate vehicle for the complete
> and prompt resolution of the issues between the parties.

Chase Brexton Health Services, Inc. v. Maryland, 411 F.3d 457, 463-
64 (4th Cir. 2005) (internal quotations and citations omitted).

    a.  Parallel Proceedings

Following the Fourth Circuit's analysis in Chase Brexton,
this Court must first determine whether the state and federal
actions are sufficiently similar to constitute parallel proceedings
before weighing the Colorado River factors to decide whether to
dismiss the non-declaratory judgment claims.[1] "Suits are parallel
if substantially the same parties litigate substantially the same
issues in different forums." New Beckley Mining Corp. v.
International Union, United Mine Workers of America, 946 F.2d 1072,
1073 (4th Cir. 1991). However, "suits need not be identical to be
parallel, . . . and the mere presence of additional parties or
issues in one of the cases will not necessarily preclude a finding
that they are parallel." AAR Int'l, Inc. v. Nimelias Enter. S.A.,
250 F.3d 510, 518 (7th Cir. 2001) (internal citations omitted).
"The question is not whether the suits are formally symmetrical,
but whether there is a substantial likelihood that the [state

---

[1]As neither party has requested a stay pursuant to the
Colorado River doctrine, this Court determines only whether the
doctrine counsels dismissal.

7

litigation] will dispose of all claims presented in the federal case." Id.

The state litigation undoubtably involves additional parties and claims. Both the plaintiffs and the original defendants in the state litigation are not parties to this action. Further, all claims asserted by the plaintiff in that action and all claims asserted by the original defendants in that action are also not involved in this litigation. PAR, as a third-party defendant, however, has asserted identical claims against Lexington, the fourth-party defendant in the state litigation. Therefore, there is more than just a substantial likelihood that the state litigation will dispose of all claims presented in this federal litigation. As such, this Court finds that the state litigation does constitute a parallel proceeding, and therefore, the first requirement in applying the Colorado River doctrine is satisfied.

   b. Application of Colorado River Doctrine

As this Court has now determined that the proceedings are sufficiently similar to constitute parallel proceedings, it must now determine whether the other factors weigh in favor of this Court abstaining and, thus, dismissing this action. A decision declining to exercise jurisdiction over a federal action because of parallel litigation in state court "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in

favor of the exercise of jurisdiction." <u>Gannett Co., Inc. v. Clark</u>
<u>Constr. Group, Inc.</u>, 286 F.3d 737, 744 (4th Cir. 2002) (quoting
<u>Moses H. Cone v. Mercury Constr. Corp.</u>, 460 U.S. 1, 16 (1983)).

(1)  <u>Assumption of Jurisdiction Over the Property</u>

PAR contends that the state litigation involves real property,
located in Marshall County, West Virginia.  This property is the
real estate that was sold through PAR and that the plaintiffs in
the underlying state litigation allege has significant foundation
problems.  PAR, however, does not allege that the state court has
taken jurisdiction over the property at issue.  Even so, the claims
at issue and those of importance in the underlying state litigation
are claims for declaratory judgment, beach of contract, common law
bad faith claims, and violations of the WVUTPA arising from a
dispute regarding an insurance policy.  Thus, no property rights
are at issue as far as this action is concerned.  This factor
therefore weighs against abstention.  <u>See</u> <u>Gannett Co., Inc. v.</u>
<u>Clark Const. Group, Inc.</u>, 286 F.3d 737, 747 (4th Cir. 2002)
(finding that when both actions are in personam proceedings, this
factor weighs against abstention).

(2)  <u>Convenience of the Federal Forum</u>

PAR next contends that the federal forum is no less convenient
to the parties than the state court.  As PAR makes no attempt to
demonstrate that the federal forum is inconvenient, this factor
weighs against abstention.

### (3)   Avoidance of Piecemeal Litigation

The third factor to consider is whether federal jurisdiction creates the danger of piecemeal litigation.  "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." Gannett Co., Inc., 286 F.3d 737 at 744.  However, the potential for conflicting outcomes, without more, is insufficient to warrant staying the exercise of federal jurisdiction.  Chase Brexton, 411 F.3d at 457 (quoting Colorado River, 424 U.S. at 816).  Rather, the exercise of jurisdiction "must create the possibility of inefficiencies and inconsistent results beyond those inherent in parallel litigation, or the litigation must be particularly ill-suited for resolution in duplicate forums." Gannett Co., Inc., 286 F.3d at 744.

In support of this factor, PAR states that the great potential for conflicting outcomes support abstention.  As stated above, however, this argument is not sufficient for this Court to decline to exercise jurisdiction over this action.  Thus, because PAR fails to provide this Court with any other argument regarding this factor, this Court must find that this factor weighs against abstention.

### (4)   Relevant Order of the Exercise of Jurisdiction

The fourth factor to be considered under Colorado River is the order in which courts obtained jurisdiction and the progress

10

achieved in each action.  Relevant to this inquiry is not only the order in which the complaints were filed, but also how much progress has been made in the two actions.  See Moses H. Cone Mem'l Hosp., 460 U.S. at 22.  PAR contends that while it filed the complaint in this action prior to filing the fourth-party complaint in the state court proceedings, PAR served Lexington with both complaints at the same time.  Therefore, PAR argues that the fact that the complaint in this action was filed first should not weigh against abstention.

As stated above, the timing is only part of the inquiry.  Also relevant to this inquiry is how much progress has been made in the two actions.  PAR asserts that Lexington has filed several motions in the state court proceedings.  Further, PAR states that Lexington has also filed responses to discovery requests and a case management order has been entered in the state case.  Lexington, however, argues that no progress has been made in the state court proceeding.  Specifically, Lexington argues that it did file a motion to dismiss and a motion for a protective order, and while these motions were heard by the state court, no action has since been taken.  After a review of the record, this Court finds that similar progress has been made in this action.  Lexington has filed a motion to bifurcate and stay the bad faith action.  Lexington has provided discovery responses, and this Court has entered a scheduling order.  Thus, not only was the complaint in this action

technically filed before the complaint in the state court
proceeding, the progress of the two actions seem to be very
similar. As such, this Court finds that this factor does not weigh
in favor of abstention.

        (5) <u>Source of Applicable Law and Adequacy of State
Court Proceedings</u>

The fifth and sixth factors require that this Court consider
whether state law provides the rule of decision on the merits and
the adequacy of state court proceedings. "[T]he Supreme Court has
made clear that the presence of state law and the adequacy of state
proceedings can be used only in 'rare circumstances' to justify
<u>Colorado River</u> abstention." <u>Gannett Co., Inc.</u>, 286 F.3d at 746
(quoting <u>Moses H. Cone</u>, 460 U.S. at 26). The Fourth Circuit found
that "these factors typically are designed to justify retention of
jurisdiction where an important federal right is implicated and
state proceedings may be inadequate to protect the federal right
. . . or where retention of jurisdiction would create 'needless
friction' with important state polices." <u>Id.</u> (citing <u>Moses H.
Cone</u>, 460 U.S. at 26; and <u>Quackenbush v. Allstate Ins. Co.</u>, 517
U.S. 706, 717-18 (1996)). Indeed, merely because state law is
implicated "does not weigh in favor of abstention, particularly
since both parties may find an adequate remedy in either state or
federal court." <u>Id.</u> at 747 (internal quotations omitted). The
Fourth Circuit has further recognized that in diversity cases,
"federal courts regularly grapple with questions of state law, and

abstention on the basis of the presence of state law, without more, would undermine diversity jurisdiction." <u>Id.</u>

Here, nothing on the record suggests that the federal forum is inadequate to protect the rights of PAR, or that the state forum is more adequate to protect such rights.   Accordingly, the mere presence of state law does not weigh in favor of declining to exercise jurisdiction.

Considered together, the <u>Colorado River</u> factors do not indicate the presence of exceptional circumstances which warrant abstention from the exercise of jurisdiction at this time over PAR's non-declaratory judgment claims.

    2.   <u>Application of the Nautilus Factors</u>

This Court must now determine whether it is appropriate to dismiss or stay the declaratory judgment claim in this action.   As an initial matter, under the Declaratory Judgment Act, 28 U.S.C. § 2201, federal courts are not required to hear declaratory judgment actions.   <u>See</u> <u>Nautilus</u>, 15 F.3d at 375.   Rather, a district court's decision to hear such a case is discretionary. <u>Id.</u>

Initially, the Fourth Circuit in <u>Mitcheson v. Harris</u>, 955 F.2d 235, 237-40 (4th Cir. 1992), indicated that when determining whether to entertain a declaratory judgment action, a district court should consider:

> (i) the strength of the state's interest in having the
> issues raised in the federal declaratory judgment action

13

> decided in the state courts; (ii) whether the issues
> raised in the federal action can more efficiently be
> resolved in the court in which the state action is
> pending; and (iii) whether permitting the federal action
> to go forward would result in unnecessary "entanglement"
> between the federal and state court systems, because of
> the presence of overlapping issues of fact or law.

Id. (as cited in Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 377 (4th Cir. 1994)).  Later, in Nautilus, the Fourth Circuit added that courts should also consider "whether the declaratory judgment action is being used merely as a device for 'procedural fencing' -- that is, 'to provide another forum in a race for res judicata' or 'to achieve a federal hearing in a case otherwise not removable.'"  15 F.3d at 377 (quoting 6A J. Moore, B. Ward & J. Lucas, Moore's Federal Practice, ¶ 57.08[5] (2d ed. 1993)).

In Chase Brexton, however, the Fourth Circuit stated that when the non-declaratory judgment claims and the declaratory judgment claims are "so closely intertwined . . . judicial economy counsels against dismissing the claims for declaratory judgment while adjudicating the [other] claims" as "the entire benefit derived from exercising discretion not to grant declaratory relief is frustrated."  411 F.3d at 466-67.

This Court finds that the claims are closely intertwined in this matter.  First, the claims arise from the same insurance policy.  Second, and more importantly, in order to determine whether Lexington has breached its contract with PAR, which is one

14

of PAR's non-declaratory judgment claims, it must be determined whether Lexington owed PAR a duty to provide coverage and a defense for the claims pending against PAR in the state court proceedings. This issue is the same issue that is at the heart of PAR's claim for declaratory judgment against Lexington.  Thus, judicial economy surely counsels against staying or dismissing the declaratory judgment claim when the identical issue is involved in both the claims and must be determined whether or not the declaratory judgment claim is dismissed.   Thus, according to the Fourth Circuit's holding in Chase Brexton, this Court should not dismiss or stay the declaratory judgment claim based on this finding alone.

Even applying the factors fully outlined in Nautilus, abstention would still be unwarranted in this action as to the declaratory judgment claim.  As to the first factor, PAR states that because West Virginia courts have not construed the particular language in this insurance policy at issue, the state has a clear interest in determining how to construct the language of the policy.  This Court does not find such argument to be persuasive. The Fourth Circuit stated in Nautilus that when exercising its "discretionary power to abstain from deciding state-law questions otherwise properly within its jurisdiction, that discretion may be exercised only when the questions of state law involved are difficult, complex, or unsettled." 15 F.3d 378.  The questions of state law in this matter do not seem to be difficult, complex, or

unsettled.  It is a matter of contract interpretation, as was the issue in Nautilus.  Accordingly, this Court finds that the first factor does not weigh in favor of abstention.

PAR argues that, as to the second factor, the issues raised in this case can be more efficiently resolved in the state court proceedings.  This Court, however, previously outlined why it would not be any more efficient for this Court to dismiss the declaratory judgment claim in this matter, as the same issues and determination must be made as to PAR's non-declaratory judgment claims, which this Court found it could not dismiss under the Colorado River doctrine.  Therefore, this factor also does not weigh in favor of abstention.

As to the third factor, PAR argues that there is a great risk of inconsistent outcomes because identical issues of law and fact are presented in this case and the state court proceedings, thus creating unnecessary entanglement between the federal and state court systems.  This Court agrees that some entanglement will result.  This entanglement, however, would result regardless of whether this Court dismisses the declaratory judgment action as a result of this Court declining to abstain from hearing the non-declaratory judgment claims under the Colorado River doctrine, as identical issues are involved in both categories of claims.  Therefore, while this factor somewhat weighs in favor of abstention, its weight is diminished by the fact that some

16

entanglement   would   result   regardless   of   dismissal   of   the declaratory judgment claim.

PAR next argues that as to the fourth factor, Lexington is in fact involved in procedural fencing.  Specifically, PAR argues that Lexington is attempting to delay the determination of the claims against it by removing this action to federal court.  This Court is not convinced that this is the type of procedural fencing, to which the court in <u>Nautilus</u> was referring.  As to the procedural fencing factor, the <u>Nautilus</u> court specifically stated that the procedural fencing they were referring to was procedural fencing "to provide another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable."  15 F.3d at 377 (citations and internal quotations omitted).  Furthermore, there is no evidence that Lexington used removal as a delay tactic.  Thus, this factor does not weigh in favor of abstention.

Therefore, not only is the declaratory judgment claim so intertwined with the other claims that judicial economy counsels against dismissing the declaratory judgment claim, a balancing of the factors outlined in <u>Nautilus</u> also requires that this Court not dismiss or stay the declaratory judgment claim.

B.   <u>Motion to Bifurcate and Stay</u>

Federal Rule of Civil Procedure 42(b) states in pertinent part:

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to

> expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

Fed. R. Civ. P. 42(b).  It is within a court's discretion to determine whether bifurcation is appropriate under Rule 42(b).  Light v. Allstate Ins. Co., 182 F.R.D. 210, 212 (S.D. W. Va. 1998).

Because Lexington seeks to bifurcate the declaratory judgment claim and contractual claims from the bad faith claims for purposes of both trial and discovery, this Court will address trial bifurcation separately from discovery bifurcation.

1.   Trial

Lexington first argues that in furtherance of convenience, to avoid prejudice, and to expedite and economize, which are the factors to be examined under Rule 42(b), all favor the bifurcation and stay.  Lexington states that the bad faith and WVUTPA claims are dependent upon the outcome of the insurance coverage claims, and some issues of the bad faith and WVUTPA claims may even be moot depending on the outcome.  Thus, Lexington believes that for this reason, convenience favors bifurcation.  As to the prejudice factor, Lexington argues that if the trial is not bifurcated, it will be confusing for the juror to hear details pertaining to insurance coverage issues while trying to decide liability and damages issues regarding the bad faith and WVUTPA claims.  Further,

Lexington argues that the parties will be prejudiced in preparing for trial, as the manner in which each party approaches trial is dependent upon the outcome of the coverage determination, which will not have been made if the trial is not bifurcated. Lexington next argues that bifurcation will be conducive to expedition and economy, because the bad faith claims and WVUTPA claims are dependant upon the coverage determination. Lexington asserts that to permit the bad faith claims and WVUTPA claims to proceed will waste the Court's and parties' resources because if a final determination is made that coverage does not exist, then many of the depositions will not be necessary.

As stated above, PAR asserts that it takes no position as to whether it would be appropriate to bifurcate the claims for trial. Instead, PAR only states that such a motion is premature. Upon review, this Court finds that under the facts of this case, it is premature to determine the appropriateness or inappropriateness of bifurcating the issues for trial. Accordingly, to the extent that Lexington's motion seeks to bifurcate the bad faith claims and WVUTPA claims for trial, this Court will deny the motion without prejudice, subject to refiling after completion of discovery.

2. <u>Discovery</u>

While finding that the bifurcation and stay motion as to the trial is premature at this time, this Court must still address whether bifurcation and stay is appropriate as to discovery. The

Supreme Court of Appeals of West Virginia has held that "trial courts have discretion in determining whether to stay discovery in a first-party bad faith claim against an insurer that has been bifurcated and stayed." <u>Light</u>, 506 S.E.2d 64,72 (1998).  The court further explained:

> Factors trial courts should consider in determining whether to stay discovery when bifurcation has been ordered in a bad faith action include: (1) the number of parties in the case, (2) the complexity of the underlying case against the insurer, (3) whether undue prejudice would result to the insured if discovery is stayed, (4) whether a single jury will ultimately hear both bifurcated cases, (5) whether partial discovery is feasible on the bad faith claim and (6) the burden placed on the trial court by imposing a stay on discovery.  The party seeking to stay discovery on the bad faith claim has the burden of proof on the issue.

<u>Id.</u>

First, this Court notes that there are only two parties involved in this action.  Thus, the number of parties does not weigh in favor of the bifurcation and stay of discovery.  Second, as stated above when addressing the factors outlined in <u>Nautilus</u> concerning PAR's motion to abstain and/or remand, this case does not seem complex.  Instead, it is a case of contract interpretation.

Third, this Court finds that there is no prejudice to the parties to allow discovery of all claims to proceed.  As PAR stated, the same parties are involved in all claims and the potential for two different discovery periods could result in the parties being required to depose the same individuals twice.

Lexington argues that prejudice will result because a jury will be confused by both types of claims being presented at the same time. Any prejudice resulting from a combined trial, however, is not relevant to determining whether discovery should be bifurcated and stayed as to the bad faith and WVUTPA claims.  Fourth, whether a single jury will hear both types of claims is still undecided. Thus, the fifth factor is not helpful at this point in the litigation in determining whether to bifurcate and stay discovery.

Fifth, this Court does not argue with Lexington's contention that partial discovery is feasible.  This Court, however, finds that in totality it would be more feasible to allow discovery to proceed for both types of claims.  PAR has alleged that many witnesses and experts will be the same for both types of claims. Thus, this possibility for double discovery makes it more feasible to allow all discovery to proceed.  Sixth and finally, this Court finds that the possibility of double discovery also increases the possible burden on this Court of staying discovery as to the other claims.  Allowing discovery on all of the claims will allow this Court to handle all discovery disputes regarding the entirety of the evidence during one discovery period.

Therefore, this Court finds that the Light factors weigh in favor of not bifurcating or staying discovery as to the bad faith and WVUTPA claims.  Accordingly, Lexington's motion to bifurcate

21

and stay insomuch as it applies to the bifurcation and stay of discovery is also denied.

### III.   Conclusion

For the reasons stated above, Paull Associates Realty, LLC's motion to remand and/or abstain (ECF No. 9) is DENIED.  Further, Lexington Insurance Company's motion for bifurcation and stay the bad faith action (ECF No. 7) is also DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:   October 25, 2013


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE